JOURNAL ENTRY and OPINION
{¶ 1} Plaintiffs-appellants James and Elizabeth Brill appeal the trial court's granting of summary judgment in favor of defendants-appellees. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm in part and reverse in part.
 I. {¶ 2} According to the record, appellants filed their complaint on August 27, 2003 against defendants-appellees Progressive Preferred Insurance Company (hereinafter "Progressive") and Daniel Rambo (hereinafter "Rambo"). Appellants allege that, on October 6, 2001, appellant James Brill (hereinafter "James") sustained severe and disabling injuries in an automobile accident caused by Rambo.
 {¶ 3} At the time of the accident, appellants were insured under a family motor vehicle policy from Progressive. On September 19, 2003, Progressive submitted its answer and counterclaim for declaratory judgment. Appellants filed their answer to the counterclaim on October 20, 2003. Rambo never responded to the complaint.
 {¶ 4} Progressive moved for summary judgment with respect to appellants' claim for uninsured motorist (UM) coverage on February 2, 2004. Appellants filed their memorandum in opposition with supporting evidentiary materials on April 2, 2004. A further reply was submitted by Progressive on April 13, 2004.
 {¶ 5} The trial court judge granted Progressive's motion for summary judgment on April 21, 2004. The entire case was then dismissed with prejudice, including the separate claims that had been raised against Rambo. Appellants filed their notice of appeal on May 14, 2004.
 {¶ 6} According to the facts, James was seriously injured in an automobile accident that occurred on October 6, 2001 while he was serving as a police officer with the city of Cleveland.[1] He was riding as a passenger in a zone patrol car that was driven by his partner, Officer David Langley. James and Officer Langley were responding to a priority run that was initiated by an off-duty officer's request for help.[2] As the officers were heading south on West 117th Street, Rambo pulled into their lane of travel and caused the collision.
 {¶ 7} The zone cars were assigned from a pool of cars maintained by the Cleveland Police Department's First District.[3] James has utilized ten to fifteen different vehicles during his tenure at the police department. Ordinarily, he and his partner used car number 112; however, on the day of the accident car number 112 was out of service.[4] The vehicle that was involved in the accident was car 112-B, which was a replacement.
 {¶ 8} As previously stated, appellants were covered under a personal automobile insurance policy issued by Progressive.[5] James' wife, Elizabeth Brill, was named on the policy as a listed driver. Only two vehicles were listed on the declarations page of the Progressive policy, a 1991 Chevrolet Lumina and a 1998 Honda Accord LX.
 {¶ 9} A copy of the insuring agreement was appended to Progressive's motion as Exhibit B. As used in the Progressive policy, the term "covered vehicle" means:
"a. any vehicle shown on the Declarations Page;
 "b. any additional vehicle on the date you become the owner if:
 "i. you acquire the vehicle during the policy period shown on theDeclarations Page;
 "ii. we insure all vehicles owned by you; and
 "iii. no other insurance policy provides coverage for that vehicle."[6]
 {¶ 10} With respect to UM/UIM coverage, the Progressive policy contains the following exclusionary clause:
"EXCLUSIONS — READ THE FOLLOWING EXCLUSIONS CAREFULLY. "IF AN EXCLUSIONAPPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III. "Coverageunder this Part III is not provided for bodily injury or property damagesustained by any person:
 "1. while operating or occupying a motor vehicle owned by, furnishedto, or available for the regular use of, you or a relative, other than acovered vehicle; * * *."[7]
 {¶ 11} Appellants contend that they are entitled to UM/UIM coverage benefits under the Progressive policy because Rambo was an uninsured motorist.[8] However, Progressive claims that UM/UIM coverage is expressly excluded under the policy because zone car 112-B was a vehicle that was available for the regular use of James. Appellants submitted a request for uninsured motorist (UM) coverage, and Progressive denied the claim. The instant lawsuit then followed.
 II. {¶ 12} Appellants' first assignment of error states the following: "The trial judge erred, as a matter of law, by granting summary judgment in favor of defendant-appellee, Progressive Insurance Company, upon plaintiff[s]-appellants' claim for uninsured motorist coverage."
 {¶ 13} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 14} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330; Mitseffv. Wheeler (1988), 38 Ohio St.3d 112, 115.
 {¶ 15} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108. UnderDresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 16} This court reviews the lower court's granting of summary judgment de novo. Brown v. County Commrs. (1993), 87 Ohio App.3d 704. An appellate court reviewing the granting of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. The motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990), 71 Ohio App.3d 46, 50;Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741.
 {¶ 17} Questions of law regarding whether insurance coverage existed are determined, in the first instance, by an examination of the relevant insurance documents, utilizing therein the familiar rules of constructionand interpretation applicable to contracts generally. Words and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined. The insurer, having prepared the policy, must also be prepared to accept any reasonable interpretation, consistent with the foregoing, in favor of the insured. Gomolka v. State Auto. Mut. Ins. Co.
(1982), 70 Ohio St.2d 166.
 {¶ 18} The record in the case at bar demonstrates that Progressive and appellants entered into a contract whereby Progressive agreed to provide insurance coverage for appellants subject to various terms and conditions. Part II of the Progressive policy provides UM/UIM coverage for appellants under certain circumstances; however, the policy also restricts coverage under certain circumstances.[9]
 {¶ 19} More specifically, the Progressive policy expressly excludes UM/UIM coverage where bodily injury is sustained by any person "while operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of, you or a relative, other than a covered vehicle."[10]
 {¶ 20} The zone car James was traveling in at the time of the accident was not a "covered vehicle" under appellants' personal policy, since the car was not owned by appellants or a resident relative.[11] Rather, the zone car in question, car 112-B, was one of several zone cars comprising the car pool assigned to the First District of the Cleveland Police Department for use by its officers, including James,[12] therefore causing appellants' loss to fall under Exclusion No. 1 of the Progressive policy. The policy states that "if an exclusion applies, coverage will not be afforded under this Part III."[13] Under these circumstances, appellants are not entitled to UM/UIM coverage.
 {¶ 21} Appellants argue that zone car 112-B should be classified as not available for his "regular use" because James ordinarily used zone car 112, another zone car from the First District's pool of zone cars. The Ohio Supreme Court rejected this line of reasoning in Kenney v.Employers' Liability Assur. Corp. (1966), 5 Ohio St.2d 131.
 {¶ 22} In Kenney, the Ohio Supreme Court stated the following:
"In order to be excluded under this exclusionary clause, an automobileneed not be a single particular automobile regularly furnished to thenamed insured. Thus it is well settled that an automobile will beexcluded under such policy provisions although it is only one of a groupof automobiles from which an automobile is regularly furnished to thenamed insured by his employer. Century Indemnity Co. v. United StatesCasualty Co., supra (306 F.2d 956); O'Brien v. Halifax Ins. Co. ofMassachusetts, supra (141 So.2d 307); Farm Bureau Mutual Automobile Ins.Co. v. Boecher, supra (37 Ohio Law Abs. 553); Davy v. Merchants MutualCasualty Co. (1952), 97 N.H. 236, 85 A.2d 388; Moore v. State Farm MutualAutomobile Ins. Co. (1960), 239 Miss. 130, 121 So.2d 125; Voelker v.Travelers Indemnity Co. (1958), 260 F.2d 275. "In our opinion, where acity police officer working on general police duty is assigned to work ina police motor vehicle on 122 of 164 working days, such a vehicle is as amatter of law `an automobile furnished for' his `regular use' within themeaning of such policy provisions."
(Emphasis added.)
 {¶ 23} In the case at bar, it is undisputed that zone car 112-B was owned by James' employer, the city of Cleveland, and that he was traveling in this car at the time of the accident. Furthermore, zone car 112-B was one of several zone cars available to him for his regular use as a police officer in the city's First District. James' regular job duties involved occupying one of the several vehicles in the First District's pool of zone cars. Therefore James, like the plaintiff inKenney, was injured while occupying a motor vehicle furnished to, or available for, his regular use.
 {¶ 24} Appellants argue in their brief that the holding in Kenney
should be re-examined in light of Sanderson v. Ohio Edison Co. (1994),69 Ohio St.3d 582; however, we do not find merit in this argument. Appellants attempt to convey the impression that Kenney has been overruled or modified by the more recent decision in Sanderson. Appellants state that Kenney stands for the proposition that the "regular use" exclusion applies where the insured is injured while occupying one of several vehicles available for his regular use, regardless of whether he regularly used the particular vehicle he was occupying when injured. However, the court in Sanderson neither stated nor implied that Kenney
was overruled or modified. In fact, Sanderson involved a single vehicle that was occasionally made available to the plaintiff by his employer, not a pool of vehicles that were made available to the plaintiff for his regular use.
 {¶ 25} The issue in Sanderson was whether a "regular use" exclusion applied to an employer's vehicle that was only available for the use of the insured employee on the rare occasions when he served as a temporary foreman. The Sanderson court held that the "regular use" exclusion did not apply since the plaintiff only possessed the employer's vehicle on the eight or ten days per year that he served as a temporary foreman. TheSanderson court distinguished Sanderson from Kenney, where the plaintiff used one of his employer's vehicles 122 out of 164 days. We findSanderson to be readily distinguishable from Kenney and do not find merit in appellants' argument.
 {¶ 26} The evidence in the case at bar and the case law above demonstrates that the trial court's actions were proper regarding its granting of Progressive's motion for summary judgment. We find that no genuine issue of material fact remains to be litigated with respect to appellants' first assignment of error.
 {¶ 27} Appellants' first assignment of error is overruled.
 III. {¶ 28} Appellants' second assignment of error states the following: "The trial judge erred, as a matter of law, by dismissing the claims of plaintiff[s]-appellants against defendantappellee, Daniel Rambo, with prejudice."
 {¶ 29} Appellants claim that the trial judge erred by dismissing the claims of plaintiffs-appellants against Rambo with prejudice; we agree and find merit with appellants' second assignment of error.
 {¶ 30} We find that the trial court incorrectly dismissed the claims against Rambo in its final order of April 22, 2004. Summary judgment was not requested on Rambo's behalf. In addition, Rambo failed to answer the complaint within the time accorded by Civ.R. 12(A) and was therefore in default.[14] The lawsuit in the case at bar was not old in comparison to other cases on the trial court's docket and had only been pending for ten months at the time the final order was issued.
 {¶ 31} Furthermore, no notice had been issued to plaintiffsappellants warning them that the court was considering the dismissal. Civ.R. 41(B)(1) states the following: "Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff'scounsel, dismiss an action or claim."[15] (Emphasis added.) Civ.R. 41(B)(1) requires notice before permitting such a disposition. Perottiv. Ferguson (1983), 7 Ohio St.3d 1, syllabus.
 {¶ 32} Accordingly appellants' second assignment of error is sustained.
Judgment is affirmed in part and reversed in part.
It is ordered that the parties bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and McMonagle, J., Concur.
[1] Deposition of James taken December 23, 2003, p. 5.
[2] James' deposition, p. 31.
[3] Ex. A, p. 13.
[4] James' deposition, pgs. 8, 13.
[5] Progressive's motion, p. 3.
[6] Progressive's motion for summary judgment at Ex. B.
[7] Progressive's motion for summary judgment at Ex. B.
[8] Plaintiffs-appellants' complaint at Count One.
[9] Plaintiffs-appellants' complaint; see, also, Progressive's motion for summary judgment at Ex. B, Part III.
[10] Progressive's motion for summary judgment at Ex. B, Part III.
[11] Definitions and declarations page.
[12] James' deposition at pgs.12-14.
[13] Progressive's motion for summary judgment at Ex. B, Part III; Progressive's Ohio motor vehicle policy, p. 16.
[14] Rule 12. "DEFENSES AND OBJECTIONS — WHEN AND HOW PRESENTED — BY PLEADING OR MOTION — MOTION FOR JUDGMENT ON THE PLEADINGS.
"(A) When answer presented.
"(1) Generally. The defendant shall serve his answer withintwenty-eight days after service of the summons and complaint upon him; if service of notice has been made by publication, he shall serve his answer within twenty-eight days after the completion of service by publication. * * *" (Emphasis added.)
[15] Rule 41. "DISMISSAL OF ACTIONS.
"(B) Involuntary dismissal: effect thereof.
"(1) Failure to prosecute. Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff'scounsel, dismiss an action or claim." (Emphasis added.)